# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE:                                    )   Bankruptcy No. 07 B 06876
                                          )   Chapter 13
ARTHUR J. GAGE,                           )   Judge John H. Squires
                                          )
            Debtor.           )


## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on the motion of Glenn Stearns, the Chapter 13

Standing Trustee (the "Trustee"), in the case of Arthur J. Gage (the "Debtor") pursuant to 11

U.S.C. §§ 329 and 330 and Federal Rule of Bankruptcy Procedure 2017 to examine the fees of

Robert V. Schaller ("Schaller"), attorney for the Debtor; to find Schaller in contempt of Court for

charging and receiving additional fees for other services rendered to the Debtor; for the award of

costs and attorney's fees incurred by the Trustee in this matter; for fines to be imposed upon

Schaller; for disciplinary relief, including a six month bar in appearances before the Court; proof

of refund of fees paid by his clients in numerous other cases with similar errors in the Federal

Rule of Bankruptcy Procedure 2016 statements filed in those cases; and referrals to the

appropriate disciplinary bodies for Illinois licensed attorneys.

For the reasons set forth herein, the Court finds that although Schaller received fees over

and above the flat fee arrangement he entered into with the Debtor, which were encompassed

within that agreement, Schaller has refunded all of the fees and has corrected the erroneous Rule

2016 statement filed in this case (and many others). The evidence does not support a finding of

civil contempt because Schaller did not violate any order of the Court, notwithstanding the errors

and omissions in the Rule 2016 statement. The Court declines to tax Schaller with the Trustee's

-2-

fees and costs. The parties shall bear their own respective costs and fees. Further, no proper basis

exists upon which to assess any fines against Schaller. Finally, the Court finds that it lacks

jurisdiction or authority to enter disciplinary relief against Schaller by way of suspension of

practice privileges because such disciplinary matters are within the exclusive jurisdiction and

authority of the United States District Court for the Northern District of Illinois, through its

Executive Committee, and the Supreme Court of the State of Illinois, through its Attorney

Registration and Disciplinary Commission.


## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern District

of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).


## II. FACTS AND BACKGROUND

On April 16, 2007, Schaller, on behalf of the Debtor, filed a Chapter 13 petition (Schaller

Ex. No. 23), plan (Schaller Ex. No. 28; Trustee Ex. No. 2), and other papers (Schaller Ex. Nos.

24 & 25) that included Schaller's required Federal Rule of Bankruptcy Procedure 2016 statement

(the "Rule 2016 statement").[1]  (Trustee Ex. No. 15; Schaller Ex. No. 26.)  The Rule 2016

---

[1]  Pursuant to Bankruptcy Rule 2016(b), every attorney for a debtor must file a
statement required by 11 U.S.C. § 329. FED. R. BANKR. P. 2016(b). Section 329(a), in turn,
requires an attorney to file a "statement of the compensation paid or agreed to be paid, if such
payment or agreement was made after one year before the date of the filing of the petition,
for services rendered or to be rendered in contemplation of or in connection with the case by
such attorney, and the source of such compensation." 11 U.S.C. § 329(a).

-3-

statement certified that Schaller agreed to accept the sum of $3,000.00 for services rendered to

the Debtor in contemplation of or in connection with the bankruptcy case. (Trustee Ex. No. 15;

Schaller Ex. No. 26.)  Further, it reflected that prior to the filing of the Rule 2016 statement,

Schaller received $983.00, which left a balance due of $2,017.00. (*Id.*)  The Rule 2016 statement

also noted that the $274.00 fee to file the Debtor's Chapter 13 case had been paid.  (*Id.*)

Additionally, it set forth that the Debtor paid $40.00 for a credit report fee and $20.00 for postage,

faxes, and photocopies (10 cents per page). (*Id.*)  In paragraph 7 of the Rule 2016 statement, the

portion that excludes certain services from the fee received by the attorney, Schaller stated that

"[w]ithin one year, Debtor(s) also paid $997 prepetition pursuant to a separate engagement letter

to negotiate a resolution of the foreclosure situation in an effort to avoid filing bankruptcy." (*Id.*)

The Rule 2016 statement included an Attachment A on a separate page. (*Id.*)  It set forth

that Schaller is a licensed real estate broker, that the Debtor engaged Schaller pre-petition as a

broker to provide a current market analysis of the value of the Debtor's residence, and that prior

to the petition date, the Debtor paid Schaller real estate fees in the amount of $299.00. (*Id.*)  This

Attachment A is the central focus of this matter, but not the principal dispute between the Trustee

and Schaller or between the Debtor and Schaller.

On May 1, 2007, Schaller filed his application and motion for allowance of fees. (Trustee

Ex. No. 16.)  Schaller indicated that the Debtor had utilized the flat fee option (for services

through case closing) pursuant to the Model Retention Agreement.[2] (*Id.*)  Subsequently, on May

---

[2] Use of a flat fee arrangement began after the Seventh Circuit Court of Appeals held
that it is proper under § 329(b) to establish a presumptive "reasonable value" of legal fees
in consumer bankruptcies, and to limit fees to this level unless counsel establishes that
services in a particular case justify more. *In re Geraci*, 138 F.3d 314 (7th Cir. 1998). After
the *Geraci* case, representatives of the Chapter 13 bar for debtors and creditors, the Chapter

-4-

22, 2007, Schaller filed a motion for authority to allow the Debtor to sell his residential real property. The motion was granted on May 25, 2007. (Schaller Ex. No. 31.) The order, which was drafted by Schaller, required that the sale proceeds be used to pay all liens on the property, as well as closing costs. (*Id.*) Further, the order provided that the Debtor was to be paid only his claimed homestead exemption, and that all remaining net proceeds were to be tendered to the Trustee and applied to the Debtor's case. (*Id.*)

The Debtor's proposed plan was set for confirmation on June 8, 2007. The sale of the real estate produced sufficient equity to pay all the Debtor's unsecured creditors in full. The plan, however, provided only for a 32% dividend to the unsecured creditors. (Schaller Ex. No. 28.) The Trustee did not recommend confirmation because the plan violated 11 U.S.C. § 1325(a)(4). The confirmation hearing was continued to July 6, 2007 to afford the Debtor an opportunity to amend the plan and address an objection filed by one of the creditors. That hearing was subsequently continued to August 3, 2007. The Debtor did not file an amended plan, and, as a result, the Court denied confirmation. The Court allowed Schaller's requested fees in the total sum of $3,000.00 in the absence of any objection. On August 8, 2007, the Trustee filed a motion

---

13 Standing Trustees, the United States Trustee, and members of this Court, including the undersigned, met and conferred at a number of public meetings regarding what developed and evolved into the optional Model Retention Agreement, which has been available for use in its various iterations for a number of years. The flat fee arrangement in the Model Retention Agreement is not required, and attorneys and their clients are free to adopt and enter into other types of fee agreements. If they opt for some other arrangement, the mandate of Rule 2016(a) requires the attorney to itemize all time and services rendered as part of the fee application process for award and allowance of fees under 11 U.S.C. §§ 330 and 331. Not surprisingly, more and more members of the consumer bankruptcy bar opt for the flat fee arrangement. This type of arrangement avoids itemization of time and tends to streamline the fee application process, especially when the attorney handles a large volume of cases involving similar scenarios.

-5-

to dismiss the Debtor's case. (Schaller Ex. No. 38; Trustee Ex. No. 6.) On August 17, 2007, the Court granted the motion. (Schaller Ex. No. 39.)

The motion at bar was filed by the Trustee on September 13, 2007. The Trustee avers that on August 29, 30, and 31, 2007, the Debtor contacted the Trustee's office, spoke with the Trustee, and appeared with a letter "outlining the events of his contact with Schaller." Among the allegations in the Debtor's letter to the Trustee are the following: the Debtor first met with Schaller on April 14, 2007; a sheriff's sale of the Debtor's residence was scheduled for April 17, 2007; the Debtor did not hire Schaller to negotiate with the mortgage company; the Debtor paid Schaller $2,314 in cash on April 14, 2007; the Debtor thought he was paying Schaller to file a bankruptcy case for him; prior to the confirmation hearing of August 3, 2007, the Debtor did not tell Schaller he no longer wished to proceed with his case; and the Debtor did not know his case was dismissed until after the fact. (Trustee Ex. No. 8; Schaller Ex. No. 45.)

The Trustee further alleges that following the events in this case, his office commenced a review of other Chapter 13 cases filed by Schaller from January 1, 2007 through August 8, 2007. Based on that investigation, the Trustee found that in twenty-nine cases Schaller charged an additional fee of $299.00 to perform a current market analysis; in forty-one cases he charged an additional fee of $997.00 to negotiate a resolution of the "foreclosure situation in an effort to avoid filing bankruptcy;" and in three cases he charged both additional fees. The Trustee concludes that Schaller engaged in a pattern of charging for these additional fees, Schaller's Rule 2016 statement was incorrect and false, and Schaller's conduct was misleading and fraudulent.

Schaller filed a response to the Trustee's motion. He acknowledged an error in his Rule 2016 statement and admitted he had not received $299.00 for a current market analysis of the

-6-

Debtor's real property.  Schaller attributed the error to the computer software he utilizes. According to Schaller, he did not proofread or review the Rule 2016 statement prior to filing it with the Court. Schaller indicated he was taking immediate steps to rectify the problem and avoid future errors. (Schaller Ex. No. 54.) Schaller stated that otherwise, the Rule 2016 statement and the payments reflected thereon were correct.

Schaller further noted that on September 25, 2007, he tendered $4,057.00 to the Trustee, as a refund of all the fees he received from the Debtor, plus an additional $500.00 for the time the Trustee expended in this matter.  (Schaller Ex. No. 47.)  Schaller outlined his version of the contacts and dealings he had with the Debtor, who allegedly agreed to the engagement for the additional $997 fee for the forbearance negotiation services on April 14, 2007. (Schaller Ex. No. 11.) Moreover, Schaller alleged that the Debtor filed the case solely to avoid losing his home at the foreclosure sale. He stated that the Debtor received the proceeds from the home sale and did not want to proceed with the case or amend his plan.  Schaller denied any other errors or wrongdoing. He admitted, however, that Rule 2016 statements in other cases he filed may contain similar errors.

The Court held an evidentiary hearing on the Trustee's motion on June 20 and August 1, 2008.  The Court heard testimony from the Debtor, Schaller, the Trustee, and A. Stewart Chapman, an attorney from Pierce & Associates, who represented the lender that filed the foreclosure action against the Debtor's real property. After the hearing, the Court took the matter under advisement.

-7-

## III. DISCUSSION

### A.    11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure 2017

Section 329(b) effectively allows the Court to determine whether the fees charged are excessive and, if so, the Court may cancel any compensation agreement between the attorney and the client, or it may order the return of the excessive portion of the fees to the debtor's estate or to the entity that made the payment. *See In re Wiredyne, Inc.*, 3 F.3d 1125, 1127 (7th Cir. 1993). In making this determination, the Court is to be guided by § 330 which sets forth a number of factors that Congress found relevant to an assessment of the value of the services. *Id.* at 1128. "Once a question has been raised about the reasonableness of the attorney's fee under [§] 329, it is the attorney himself [or herself] who bears the burden of establishing that the fee is reasonable." *Geraci*, 138 F.3d at 318. The legislative history for § 329 notes that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to *careful scrutiny.*" H.R. REP. NO. 95-595, at 329 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6285 (emphasis supplied).

Section 329(a) requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." 11 U.S.C. § 329(a). Bankruptcy Rule 2016(b) establishes when the statement is to be filed and includes a provision requiring such disclosure "after any payment or agreement not previously disclosed." FED. R. BANKR. P. 2016(b). Fee disclosure under § 329 and the Rules is mandatory, not permissive. *In re Whaley*, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002). Timely disclosure under § 329 and Bankruptcy Rule 2016(b) is central to the integrity of the bankruptcy process. *In re TJN,*

-8-

*Inc.*, 194 B.R. 400, 403 (Bankr. D.S.C. 1996). Failure to disclose (in this case *fully* disclose) is

sanctionable and can include partial or total denial of compensation, as well as partial or total

disgorgement of fees already paid. *See In re Prod. Assocs., Ltd.*, 264 B.R. 180, 186, 189 (Bankr.

N.D. Ill. 2001). The extent to which compensation should be denied rests with the Court's sound

discretion. *See Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d

877, 882 (9th Cir. 1995). Many courts, perhaps the majority, punish defective disclosure by

denying all compensation. *See, e.g., Park-Helena*, 63 F.3d at 882; *Turner v. Davis, Gillenwater*

*& Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993); *In re Griffin*, 313 B.R.

757, 764 (Bankr. N.D. Ill. 2004).

The determination whether the inaccuracies in the Rule 2016 statement are a purposeful

failure to disclose or merely amount to a scrivener's error is clearly within the purview of the

Court. In order to resolve this issue, the Court must review the evidence presented at the hearing

on this matter. The Debtor testified that he did not retain Schaller to perform a real estate

appraisal or analysis. Further, the Debtor stated that he did not authorize Schaller to negotiate

with the lender. The Debtor told Schaller that he attempted to work out a deal with the lender,

but due to insufficient funds, the lender refused to halt the foreclosure action. The Debtor

admitted that he signed several documents during his first meeting with Schaller on April 14,

2007, including the engagement letter for the foreclosure forbearance work and the Model

Retention Agreement. (Schaller Ex. Nos. 11, 12, 14, 15, 16, 20, 21, & 22.) The Debtor testified

that he did not recall reviewing those documents with Schaller or reading them prior to signing

them. According to the Debtor, Schaller had him sign several blank documents. The Debtor

further testified that he left several phone messages for Schaller that were never returned.

-9-

Schaller, on the other hand, testified unequivocally that he never asked the Debtor to sign a blank document. Rather, he met with the Debtor for several hours on April 14, 2007, advised him of his options, and prepared numerous documents for him to sign before he left. Schaller stated that he and the Debtor reviewed paragraph by paragraph the engagement letter for the foreclosure forbearance work. (Schaller Ex. No. 11; Trustee Ex. No. 17.) Schaller testified that the Debtor authorized him to engage in forbearance negotiations with the lender. According to Schaller, on April 15, 2007, he prepared and faxed a letter to the lender's attorney, Pierce & Associates, regarding the pending foreclosure action and the Debtor's desire to cure the default. (Schaller Ex. No. 18; Trustee Ex. No. 9.) Schaller also drafted a forbearance agreement that reflected the Debtor's proposal to the lender. (Schaller Ex. No. 17; Trustee Ex. No. 11.)

In regards to the inaccuracies in the Rule 2016 statement, Schaller admitted that his proclamations to the Court were incorrect. Specifically, he conceded that the Debtor did not pay him $299.00 to perform a current market analysis of the Debtor's residence as reflected on Attachment A to the Rule 2016 statement. (Schaller Ex. No. 26.) Schaller explained that he did not proofread or review that document for accuracy prior to filing it with the Court. He testified that he has stopped charging additional fees for real estate appraisals and for forbearance negotiations. Schaller stated that he refunded to the Trustee all of the fees he received from the Debtor.

The trial testimony shows that the Debtor and Schaller have markedly different recollections regarding what transpired between them. Unfortunately, there were no corroborating witnesses to support their respective versions of their contacts and interactions. The Court is mindful that sometimes individuals have widely differing recollections of events they participated

-10-

in or observed. Human memory is often frail, imperfect, and self-serving, which may account for the variance in the testimony between Schaller and the Debtor. The truth probably lies somewhere between their separate versions based on their recollections, which likely have been eroded by the passage of time. What is clear is that they had a falling out at some point and the Debtor was very dissatisfied with Schaller. Both Schaller and the Debtor are obviously biased in their own favor and against each other, and their testimony is weighed accordingly. In addition, both have some credibility problems: the Debtor because of his failure to recall or remember a substantial number of events and documents he admittedly signed; and Schaller because of his failure to proofread the Rule 2016 statement, which contained the glaring inaccuracies of certifying that he had been retained to perform a real estate appraisal and that he received $299.00 for that service when he did not perform that work.

Initially, the Court will address the Trustee argument that the Debtor cannot be expected to know what he signed or remember if he signed certain documents. This argument lacks any merit and serves as an unacceptable excuse that ignores the apt legal maxim *ignorantia legis neminem excusat* (ignorance of the law excuses no one). Moreover, the law provides under basic contract principles that the Debtor, like Schaller, is charged with knowledge of and assent to the terms of the documents he signs. *See Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006).

The Court finds that there was no evidence adduced to show that Schaller obtained the Debtor's signature on any of the documents, including the Model Retention Agreement and the engagement letter for the foreclosure forbearance work, under duress or by fraud in the inducement. The Court finds that the Debtor agreed to the fees set forth in the Model Retention

-11-

Agreement and the engagement letter for the forbearance work, whether he fully understood those documents or read them. *See Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir. 1985) (stating that "a person who signs a contract cannot avoid his obligations under it by showing that he did not read what he signed").

The record also reveals a less than timely and adequate response to communications between attorney and client, each to the other, which may account for the origin of the falling out between Schaller and the Debtor. This demonstrates careless and sloppy practice on the part of an experienced bankruptcy practitioner who should have promptly responded to his client's phone calls as well as proofread his Rule 2016 statement. As a result of his errors and omissions, Schaller has incurred the cost of defense of the Trustee's motion at bar.

The Court further finds that the Rule 2016 statement filed by Schaller was false and erroneous, notwithstanding his certification that it was a complete statement of his fee agreement with the Debtor. The Court concludes that the defective Rule 2016 statement was the product of Schaller's failure to review and proofread that document rather than a fraudulent attempt to bilk an extra or unauthorized fee from the Debtor. Both the Trustee and the Court rely on the reasonable accuracy and truthfulness of papers filed in bankruptcy cases, and Rule 2016 statements are no exception. The evidence adduced here shows that Schaller's error was made in this and other cases, but there is no corroborating evidence to show his conduct was intended to defraud the Debtor, the Trustee, or the Court. Schaller obviously realized the seriousness of his errors and omissions by his commendable efforts to mitigate by tendering a full refund of all fees and costs to the Debtor even before the pleadings were joined in this matter. He also negotiated settlements with the Trustee in the other cases where such extra or unauthorized fees

-12-

were charged. Accordingly, the Court finds that there is no further relief under § 329 that can or should be imposed at this point.

The Court notes that the Debtor received the main benefit he sought–the imposition of the automatic stay of 11 U.S.C. § 362(a) to stop the foreclosure sale and effectuate the sale of his real estate in order to preserve and realize the equity therein. The real economic losers in this case are the Debtor's unsecured creditors who were stayed from collection actions during the pendency of the case, and who have not been paid despite the Debtor's testimony that he intends to pay them.

The Trustee argues that because of the timing of the events in this case regarding the forbearance offer sent by Schaller to counsel for the lender with only one subsequent business day prior to the day of the scheduled foreclosure sale, with no tender of any of the mortgage arrearage owed by the Debtor, Schaller intended to defraud the Debtor and overreach on the fees charged. The Debtor, however, admitted signing the engagement letter for that work. Thus, the Court cannot infer fraud in the absence of other corroborative evidence. At the same time, the Court notes that there was no meaningful time left within which to negotiate a forbearance agreement with the mortgage holder. What is clear from the evidence in this matter, and the pattern discernable from the Rule 2016 statements filed in other cases, is that Schaller was using the separate engagement letter for forbearance work and real estate market analysis (in other cases) in order to obtain fees above and beyond the cap set in the Model Retention Agreement for services rendered "in connection with" and/or "in contemplation of" the bankruptcy case.

The undisputed facts in this matter are clear. Schaller and the Debtor met for the first time at an extended conference on April 14, 2007, when the engagement letter for the forbearance work

-13-

and the separate Model Retention Agreement were signed. The filing of this case was contemplated at that initial meeting because there was little time to negotiate and effectuate any forbearance as the foreclosure sale was set for April 17, 2007. The Court rejects Schaller's argument that all his work performed was not covered under the Model Retention Agreement or that the Model Retention Agreement should be narrowly construed to exclude the forbearance work simply because those services are not specifically detailed or mentioned in that document. Rather, the Court finds that the Model Retention Agreement should be fairly and reasonably construed and applied in light of the facts of this matter. In particular, paragraph 16 provides that the attorney shall " [p]rovide any other legal services necessary for the administration of the case...." (Trustee Ex. No. 18; Schaller Ex. No. 20.) The Model Retention Agreement was signed on April 14, 2007, the same time as the other initial bankruptcy papers were prepared and executed. Unquestionably, Schaller's efforts in drafting the forbearance proposal letter and faxing it to Pierce & Associates were in the nature of legal services on the Debtor's behalf as part of the strategy to save the equity in the Debtor's home and stay the imminent foreclosure sale.

As noted in *In re Mayeaux*, 269 B.R. 614 (Bankr. E.D. Tex. 2001), "[a] fee payment is made 'in contemplation of' a bankruptcy case if the underlying professional services were rendered at a time when the debtor was contemplating bankruptcy." *Id.* at 622. On the other hand, in order to ascertain whether legal services rendered by counsel for a debtor were "in connection with" the bankruptcy case, a court must determine whether "the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case. . . ." *Id.* at 623.

It is abundantly clear on the facts adduced in this matter that all the fees and costs paid to Schaller made "in contemplation of" and/or "in connection with" the Debtor's bankruptcy case.

-14-

Hence, the fees paid to Schaller are subject to review and are covered under paragraph 16 of the Model Retention Agreement. Complete and accurate disclosure of all fees paid or agreed to be paid to a debtor's attorney in a case is central to the integrity and transparency of the bankruptcy process. Schaller's erroneous disclosure overstated what he had been retained for and paid, distorted the record, and constituted a false certification. This conduct violated Rule 2016. The Court declines to narrowly construe the Model Retention Agreement in Schaller's favor, and rejects his argument that the error in his Rule 2016 statement was superfluous, unimportant, immaterial, and that it did not render the statement materially false. The Court regards all certifications or statements made under penalty of perjury as substantial, important, and material.

Lastly, the Court rejects Schaller's argument that he is somehow the "victim" of the Trustee's conduct in connection with the motion, or that the Trustee failed to conduct a good faith or impartial investigation of the Rule 2016 statement and Schaller's representation of the Debtor prior to filing the motion because the Trustee did not first contact Schaller to hear his side of the story. The Trustee testified that it was only after the case was dismissed and the Debtor brought his complaints to the Trustee about Schaller's fees and his failure to adequately communicate with the Debtor that the tempest in this and all the other cases arose. There was no evidence adduced to show that the Trustee was predisposed to engage in any legal vendetta or war of attrition against Schaller. On the contrary, the limited record here shows similar "scrivener's errors" in Rule 2016 statements filed by Schaller in a substantial number of other cases. At bottom, Schaller's own errors and omissions created his self-described nightmare and he has victimized himself through failure to proofread and correct his papers filed in this and other cases and to promptly and adequately respond to the Debtor. Thus, the Trustee (as well as his counsel) is to

-15-

be commended for his efforts in serving as watch-person against false and inaccurate filings in

the cases he is assigned to oversee and administer.

### B.      Civil Contempt

Next, the Trustee argues that Schaller should be held in civil contempt in this case and at

least forty-two others for "prospectively" violating the Court's fee awards.[3]  According to the

Trustee, this novel theory of "prospective violation" of subsequently entered orders was effected

by Schaller receiving fees for forbearance work and real estate market analysis, and disclosing

those additional fees prior to the entry of the fee orders under the Model Retention Agreement.

This argument is unsupported by any cited authority, and the Court rejects this contention.

Federal Rule of Bankruptcy Procedure 9020 specifically provides for contempt

proceedings.  Local Bankruptcy Rule 9020-1 of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Northern District of Illinois provides the appropriate procedure for

commencing civil contempt proceedings.  Local Bankr. R. 9020-1.  In addition, 11 U.S.C. §

105(a) codifies the contempt power of the bankruptcy court and provides as follows:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

---

[3]  The Court notes that the only matter currently before it is the Debtor's case.
Accordingly, the Court will focus on this case.  While Schaller's similar errors in his Rule
2016 statements in other cases certainly demonstrate a pattern, the Court will not entertain
the entry of any sanctions or other action against Schaller in those cases based on the motion
in the case at bar.

-16-

11 U.S.C. § 105(a). Indeed, "[s]ection 105 grants broad powers to bankruptcy courts to implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process." *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997).

"The power of contempt is inherent in all courts, as the ability to enforce orders . . . is essential to the orderly administration of justice." *Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation Inc.)*, 351 B.R. 529, 585 (Bankr. N.D. Ill. 2006), *amended*, 355 B.R. 691 (Bankr. N.D. Ill. 2006). Bankruptcy courts can impose sanctions and make findings of civil contempt. *See, e.g., In re Hancock*, 192 F.3d 1083 (7th Cir. 1999); *In re Maurice*, 69 F.3d 830 (7th Cir. 1995).

The purpose of civil contempt proceedings "is to secure compliance with a prior court order." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996). The power of a court to find one in civil contempt rests in its inherent limited authority to ensure judicial proceedings are conducted in an orderly manner. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999). "Courts have inherent and statutory powers to punish a party that fails to comply with the terms of their orders, and to coerce compliance with such orders." *Baldwin Piano, Inc. v. Deutsche Wurlitzer*, GMBH, No. 03 C 2105, 2004 WL 1323940, at *1 (N.D. Ill. June 15, 2004).

"In order to prevail on a contempt petition, the complaining party must demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a *court order*." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993) (emphasis in original). *See also In re Ryan*, 100 B.R. 411, 417 (Bankr. N.D. Ill. 1989). Violation of the court order does not have to be "willful" to find a party in contempt. *Stotler & Co. v. Able*,

-17-

870 F.2d 1158, 1163 (7th Cir. 1989). Rather, it must be found that the offending party knowingly

violated a specific court order. *In re Johnson*, 148 B.R. 532, 538 (Bankr. N.D. Ill. 1992). A party

may be found in contempt if he has not been "'reasonably diligent and energetic in attempting to

accomplish what was ordered.'" *Stotler*, 870 F.2d at 1163 (*quoting Am. Fletcher Mortgage Co.

v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982)).

The Court finds that Schaller is not in contempt of a court order. The only relevant order

is the award of fees to Schaller based on the application he filed, which tracked the underlying

fee agreement he entered into with the Debtor. There is no evidence to indicate that he violated

that order by charging or receiving additional undisclosed fees. Indeed, Schaller fully refunded

all fees after the Trustee brought the instant motion.

### C.     Sanctions

Next, the Trustee seeks sanctions against Schaller under § 105(a). The Court declines to

sanction Schaller under § 105(a). Even though the Rule 2016 statement he filed (in this case and

others) was incorrect, the Court finds that the errors and omissions do not rise to the level of an

abuse of the judicial process. *See Volpert*, 110 F.3d at 501. Schaller testified that the error in the

instant Rule 2016 statement was the result of his failure to carefully review the document. While

this certainly demonstrates carelessness on Schaller's part, it does not rise to the level of an abuse

of the judicial process. Furthermore, the Court will not fine Schaller or assess the Trustee's fees

and costs against him. The parties shall bear their own respective costs and fees. Lastly, Schaller

devotes a portion of his post-trial brief to defeat any sanctions against him under Federal Rule of

Bankruptcy Procedure 9011. The Trustee, however, does not seek sanctions against him under

this Rule. Thus, the Court will not further address this point.

-18-

### D.    Disbarment or Suspension of Practice

Lastly, the Trustee seeks disciplinary relief against Schaller by way of suspending his practice privileges as a member of the bar or disbarring him *pro tempore* for his conduct. Attorneys who practice before this bankruptcy court are admitted to the District Court bar pursuant to LR83.10 of the Local Rules of the United States District Court for the Northern District of Illinois as there is no separate bar admission for practice before the bankruptcy court. The District Court has promulgated its rules for disciplinary proceedings under LR83.25-LR83.30. The term "discipline," as defined by LR83.25(a)(3), includes disbarment, suspension from practice, reprimand or censure, and other disciplinary actions such as restitution of funds, completion of educational programs, compliance with treatment programs, and community service. The term discipline excludes sanctions or contempt. LR83.25(a)(3). Moreover, LR83.25(c) expressly reserves power in all judges of the District Court, including bankruptcy judges, to maintain control over proceedings brought before them, including contempt power. The Executive Committee serves as the disciplinary committee of the District Court under LR83.25(b).

Although other judges of this Court may have contrary opinions, the Court finds that it lacks authority to enter the drastic relief of disbarment or suspension from practice. That power and authority is reserved for the Executive Committee of the District Court. If the Trustee wants to pursue such relief against Schaller, he must follow the complaint procedures contained in LR83.28. In this regard, the Court notes that the Trustee has made a referral and complaint regarding Schaller to the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois.

-19-

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that although Schaller received fees over and above the flat fee arrangement he entered into with the Debtor, which were encompassed within that agreement, Schaller has refunded all of the fees and has corrected the erroneous Rule 2016 statement filed in this case (and many others). The evidence does not support a finding of civil contempt because Schaller did not violate any order of the Court, notwithstanding the errors and omissions in the Rule 2016 statement. The Court declines to tax Schaller with the Trustee's fees and costs. The parties shall bear their own respective costs and fees. Further, no proper basis exists upon which to assess any fines against Schaller. Finally, the Court finds that it lacks jurisdiction or authority to enter disciplinary relief against Schaller by way of suspension of practice privileges because such disciplinary matters are within the exclusive jurisdiction and authority of the United States District Court for the Northern District of Illinois, through its Executive Committee, and the Supreme Court of the State of Illinois, through its Attorney Registration and Disciplinary Commission.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: _9/17/8_

_____
John H. Squires
**United States Bankruptcy Judge**

cc: See attached Service List

## SERVICE LIST

### In re:   Arthur J. Gage
### Bankruptcy No. 07 B 06876

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604

Robert V. Schaller, Esq.
907 North Elm Street
Suite 100
Hinsdale, IL 60521

Glenn B. Stearns, Esq.
Chapter 13 Standing Trustee
4343 Commerce Court
Suite 120
Lisle, IL 60532

Steven B. Towbin, Esq.
Gordon E. Gouveia, Esq.
Vipin R. Gandra
Shaw Gussis Fishman Glantz Wolfson &
Towbin LLC
321 North Clark Street, Site 800
Chicago, IL 60610

Carolyn A. Suzzi, Esq.
4343 Commerce Court
Suite 120
Lisle, IL 60532

Arthur J. Gage
2708 Royal Kings Court
Saint Charles, IL 60174